

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, | ) ) ) | No. 41023-4-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| UNITED STATES FIRE INSURANCE COMPANY, | ) ) ) | |
| Respondent. | ) ) | |

MURPHY, J. — Union Pacific Railroad Company (Union Pacific) appeals from the trial court's orders granting summary judgment to United States Fire Insurance Company (U.S. Fire) and denying Union Pacific's cross-motion for summary judgment. We reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Union Pacific was insured by U.S. Fire under successive primary and excess comprehensive general liability policies from 1972 to 1985.[1] Under these policies,

---

[1] The extent of coverage under these policies is not contested on appeal.

U.S. Fire was contractually obligated to indemnify Union Pacific for amounts Union Pacific was legally responsible to pay for damage subject to policy limits, and defense costs and expenses.

*1989 Wyoming Action*

In 1989, Union Pacific sued U.S. Fire and other insurers for denying coverage of claims against Union Pacific alleging damage caused by exposure to chemicals and/or waste materials related to Union Pacific's operations ("Environmental Pollution" claims). In the complaint in this lawsuit (hereinafter the "Wyoming Action"), Union Pacific requested declaratory relief and damages related to five specific sites: Laramie, Wyoming; The Dalles, Oregon; Las Vegas, Nevada; Pocatello, Idaho; and the Petrochem/Ekotek facility in Utah. All but the Utah facility were owned by Union Pacific. In addition to these identified sites, Union Pacific also sought declaratory relief for other unnamed facilities it owned that were "allegedly contaminated by hazardous substances [and] may require investigation and remediation." Clerk's Papers (CP) at 652. Under the subsequent heading in the complaint entitled "All Facilities Identified Above," Union Pacific alleged that it had incurred and would incur substantial costs responding to existing governmental orders and pending actions, and anticipated future private claims for property damage and personal injury. CP at 652-53. The 1989 Wyoming Action was

2

therefore framed as site-specific and trigger-specific, tied to facilities facing active or pending governmental oversight.

*1990 Settlement Agreement*

In 1990, the parties entered into a fully integrated confidential settlement agreement and release ("1990 Agreement") resolving the claims arising out of Union Pacific's facility in Laramie, Wyoming. The 1990 Agreement defined "Site" as "Union Pacific's tie-treatment facility, located in Laramie," and defined "Other Sites" broadly to include virtually any other facility Union Pacific owned, operated, or used at any time with potential environmental liability, with narrow exclusions for certain predecessor railroads. CP at 669-70. "Environmental Pollution" was defined expansively to include contamination, property damage, bodily injury, personal injury, cleanup costs, and related claims. CP at 670-71. "Coverage Disputes" meant controversies that "have arisen" between the parties concerning coverage for Environmental Pollution. CP at 672. "The Wyoming Action" was defined as the 1989 lawsuit filed in the United States District Court for the District of Wyoming. CP at 672.

The stated purposes of the 1990 Agreement were to settle the Coverage Dispute as to the Site in Laramie, provide indemnification as set forth in the agreement, and "limit the Coverage Disputes at the Other Sites and provide for possible future resolution of the Coverage Disputes at the Other Sites." CP at 673. The agreement reserved all rights

regarding matters outside its scope. U.S. Fire agreed to pay $9.25 million as a complete and final settlement of all obligations for Environmental Pollution at or arising out of the Site in Laramie, exhausting at least one policy limit. In exchange, Union Pacific released U.S. Fire from all claims—known or unknown—for Environmental Pollution at the Site.

The 1990 Agreement also addressed the remaining claims from the Wyoming Action. It required Union Pacific to file a stipulation of dismissal with prejudice as to the Site in Laramie, and a stipulation of dismissal without prejudice as to the Other Sites, while using "its best efforts" to obtain dismissal of U.S. Fire from the Wyoming Action entirely. CP at 677. The 1990 Agreement created a framework allowing Union Pacific to reinstitute litigation against U.S. Fire for Environmental Pollution at the Other Sites after final adjudication with other insurers, subject to a $9.25 million cap on recovery. U.S. Fire retained the option to pay, up to and including 30 days after any litigation was restarted by Union Pacific against U.S. Fire with regard to any of the Other Sites, an additional $2.5 million to settle those disputes. The 1990 Agreement emphasized all payments were the result of negotiations of disputed claims that were asserted in the Wyoming Action. The 1990 Agreement was governed by Illinois law.

*1992 Settlement Agreement*

In 1992, U.S. Fire exercised its option under the 1990 Agreement and paid an additional $2.5 million to settle claims related to the Other Sites. The parties entered into

4

a confidential settlement agreement and release ("1992 Agreement"). Its stated purpose was "to settle completely and finally the Coverage Disputes at the Other Sites pursuant to paragraph 6.7 of [the 1990 Agreement]." CP at 699. The 1992 Agreement carried forward identical definitions of "Site," "Other Sites," "Environmental Pollution," "Coverage Disputes," and "Wyoming Action." CP at 696-99. The scope of the 1992 Agreement was confined to settling "a disputed claim for purposes of settling or limiting that claim and avoiding incurring of additional costs in resolving or litigating the Coverage Disputes." CP at 700. The only difference between the language in this provision and the corresponding provision in the 1990 Agreement is that the words "or the Wyoming Action" do not appear in this paragraph but appear two times in the corresponding paragraph within the 1990 Agreement. *Compare* CP at 673-74 *with* CP at 700.

U.S. Fire agreed to pay $2.5 million to Union Pacific "as a complete and final settlement of all obligations U.S. Fire may have under the Polices for Environmental Pollution at or arising out of the Other Sites." CP at 701. The release "pertain[ed] solely to any claimed or threatened liability, whether known or unknown, for Environmental Pollution under the policies relating to the Other Sites." CP at 701. Union Pacific released U.S. Fire from all claims—known or unknown—for Environmental Pollution at the Other Sites. Additionally, the 1992 Agreement was intended to satisfy fully any liability related

5

to Environmental Pollution in connection with the Other Sites, reserved Union Pacific's rights to pursue claims against others, and required Union Pacific to indemnify U.S. Fire for certain liabilities arising from litigation with other insurers over coverage at the Other Sites. The 1992 Agreement was also governed by Illinois law.

*Current claims*

In 2021, Union Pacific initiated an action against U.S. Fire in Spokane County Superior Court, seeking a declaratory judgment on insurance coverage available for environmental pollution claims at four properties located in Washington and Oregon ("2021 Action").[2] These sites were not identified in the Wyoming Action, and Union Pacific alleged that no governmental actions or orders existed for these properties prior to the 1992 Agreement between the parties. One of U.S. Fire's affirmative defenses to Union Pacific's complaint was that the claims were barred pursuant to the terms of the prior release in the 1992 Agreement. U.S. Fire moved for summary judgment on this affirmative defense of prior release. Union Pacific also moved for summary judgment

---

[2] The properties are located in: Spokane Valley, Washington ("Trentwood Property"); Freeman, Washington ("Freeman Site"); Ridgefield, Washington ("Port of Ridgefield Site"); and Portland, Oregon ("Portland Harbor Superfund Site"). According to Union Pacific, the federal government was alleging that a rail yard operated by Union Pacific, the Albina Yard, was a principal source of hazardous materials impacting the Portland Harbor Superfund Site.

6

on U.S. Fire's prior release affirmative defense, arguing the claims in the 2021 Action fell outside the scope of the 1990 Agreement and 1992 Agreement because no Coverage Dispute had arisen as to these sites by the time of execution of the 1992 Agreement.[3] In support of its motion, Union Pacific submitted correspondence from 1991 ("1991 Correspondence") in which the parties had specifically identified the Other Sites encompassed in the 1989 Wyoming Action; none of those sites overlap with the 2021 Action claim sites.[4]

The trial court denied Union Pacific's motion and granted summary judgment to U.S. Fire on its affirmative defense of prior release. In a letter ruling, the court concluded that the broad definition of "Other Sites" controlled, that the parties in the 1992 Agreement intended to release all known and unknown claims for Environmental Pollution at any Other Sites, and that the new claims were therefore barred.

Union Pacific timely appeals.

---

[3] In support of its summary judgment motion, Union Pacific submitted communications from various governmental entities for each site in the 2021 Action, dated as early as 2000 and as recently as 2015. The governmental entities included the Washington State Department of Ecology, the United States Environmental Protection Agency, the Oregon Department of Environmental Quality, and the Portland Harbor Natural Resource Trustee Council.

[4] The ten Other Sites were located as follows: Santa Fe Springs, California; Kellogg, Idaho; Butte, Montana; LaGrande, Oregon; Erda, Utah; Tacoma, Washington; Seattle, Washington; Wichita, Kansas; Omaha, Nebraska; and Torrington, Wyoming.

ANALYSIS

Union Pacific contends the trial court erred by granting summary judgment to U.S. Fire on its affirmative defense of prior release. Union Pacific argues the plain language of the 1992 Agreement shows that the scope of release was limited to then-existing coverage disputes as to the Other Sites contemplated in the 1989 Wyoming Action. While Union Pacific contends extrinsic evidence is not necessary to settle this dispute, it argues nonetheless that the 1991 Correspondence supports its position that the 2021 Action claims are not limited by the 1992 Agreement.

It is U.S. Fire's position that the plain language of the 1992 Agreement unambiguously released the claims at issue in this lawsuit. Specifically, U.S. Fire points to the expansive release language and the broad definition of Other Sites. While U.S. Fire agrees the extrinsic evidence is not necessary to settle this dispute, it alternatively argues the 1991 Correspondence and the parties' past performance of tendering no claims for practically 30 years demonstrates that both parties considered the current claims to be released.

We review a trial court's summary judgment decision de novo. *Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 781, 357 P.3d 1040 (2015). "A Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

8

material fact and that the moving party is entitled to a judgment as a matter of law.'"

*Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997) (quoting

CR 56(c)). "The facts and all reasonable inferences therefrom must be considered in

the light most favorable to the nonmoving party." *Id*. at 198. This court will uphold the

trial court's judgment "upon any theory established by the pleadings and supported by

the proof, even if the trial court did not consider it." *LaMon v. Butler*, 112 Wn.2d 193,

200-01, 770 P.2d 1027 (1989).

The parties do not dispute that the 1990 Agreement and 1992 Agreement are

governed by Illinois law. Therefore, we apply Illinois substantive law to determine the

meaning and scope of the release in the 1992 Agreement. *See Erwin v. Cotter Health

Ctrs.*, 161 Wn.2d 676, 690-700, 167 P.3d 1112 (2007).

Under Illinois law, a release is a contract that must be interpreted according to

ordinary contract principles. *Doctor's Assocs. Inc. v. Duree*, 319 Ill. App. 3d 1032, 1045,

745 N.E.2d 1270, 253 Ill. Dec. 736 (2001). The primary objective is to give effect to

the parties' intent as expressed in the language of the agreement when read as a whole.

*Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 349 Ill. Dec. 936 (2011).

"A court must construe the meaning of a contract by examining the language and may

not interpret the contract in a way contrary to the plain and obvious meaning of its

terms." *Dean Mgmt., Inc. v. TBS Constr., Inc.*, 339 Ill. App. 3d 263, 269, 790 N.E.2d 934,

274 Ill. Dec. 161 (2003). A contract is not rendered ambiguous simply due to the parties' disagreement as to its meaning. *Clanton v. Oakbrook Healthcare Ctr., Ltd.*, 2023 IL 129067, ¶ 33, 4226 N.E.3d 1266, 70 Ill. Dec. 470.

All provisions of the contract must be given effect, if possible. *Wood v. Evergreen Condo. Ass'n*, 2021 IL App (1st) 200687, ¶ 51, 189 N.E.3d 1045, 454 Ill. Dec. 484. Construction that renders terms superfluous is disfavored. *In re Marriage of Arvin*, 184 Ill. App. 3d 644, 648, 540 N.E.2d 919, 133 Ill. Dec. 53 (1989).

Releases are strictly construed against the party seeking enforcement. *Hawkins v. Cap. Fitness, Inc.*, 2015 IL App (1st) 133716, ¶ 19, 29 N.E.3d 442, 390 Ill. Dec. 510. Courts determine the scope of a release by examining the entire agreement, its purpose, and the circumstance, giving effect to specific recitals that restrain general words. *See Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 23, 799 N.E.2d 756, 278 Ill. Dec. 891 (2003); *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1014, 932 N.E.2d 569, 342 Ill. Dec. 442 (2010); *Weidner v. Szostek*, 245 Ill. App. 3d 487, 491, 614 N.E.2d 879, 185 Ill. Dec. 438 (1993).

The 1992 Agreement's "Purpose and Scope" section, specifically the introductory clause, is dispositive of the comprehensiveness of the agreement: "to settle completely and finally the Coverage Disputes at the Other Sites pursuant to paragraph 6.7 of the [1990 Agreement]." CP at 699. This operative language does not purport to settle *all*

Environmental Pollution claims at *all* facilities that might fit the broad definitional section. Instead, it expressly ties the settlement to the limited framework created in the 1990 Agreement for "the Coverage Disputes at the Other Sites" that were part of the Wyoming Action. The 1990 Agreement fully resolved claims for the Site located in Laramie and created a distinct pathway—dismissal without prejudice, capped reinstitution, or settlement under paragraph 6.7—only for the Other Sites then in dispute. By incorporating that framework, the 1992 Agreement limits "the Other Sites" to those disputes rather than expanding coverage to every facility meeting the broad definition.

The language in the "Release" section of the 1992 Agreement confirms this limitation. *See* CP at 701-03. The release applies "solely to any claimed or threatened liability, whether known or unknown, for Environmental Pollution under the policies relating to the Other Sites." CP at 701-02. The definite article "the" and the past-tense oriented phrase "claimed or threatened" indicate that the release targets liabilities connected to the disputes that the parties were actively resolving, consistent with the governmental actions and orders that were alleged in the 1989 Wyoming Action.

Additional provisions in the 1992 Agreement anticipated that Union Pacific might engage in litigation with other insurers over the same Other Sites that were the basis for the Wyoming Action. The parties bargained for the 1992 release provisions in anticipation that U.S. Fire might be sued or become legally obligated in the event

11

Union Pacific sued other insurers for coverage related to the Other Sites. Union Pacific agreed to fully indemnify U.S. Fire for such obligations, excluding attorney fees and defense costs. These provisions are further proof that the 1992 Agreement is tied to the original Wyoming Action framework.

Although both the 1990 Agreement and 1992 Agreement contain broad definitional language for "Other Sites," that definition does not control when it conflicts with more specific operative provisions. We ascertain the scope of a release by the intent manifested in the agreement as a whole. *Janowiak*, 402 Ill. App. 3d at 1014. The broad definition of "Other Sites" cannot override the agreement's purpose and scope, the cross-reference to the 1990 Agreement framework, the past tense language of "claimed or threatened," use of the definite article, and the overall structure separating the Site located in Laramie from the Other Sites. Interpreting "Other Sites" to override such provisions would render them meaningless. Illinois law disfavors such construction.

The new claims in the 2021 Action involve environmental liabilities at four sites in Washington and Oregon that were not identified in the Wyoming Action and for which no governmental actions or orders existed between initiation of the Wyoming Action in 1989 and execution of the 1992 Agreement. No insurance coverage dispute as to these sites had "arisen" by the time of either the 1990 Agreement or 1992 Agreement, and these sites were never part of the limited 1990 framework for reinstitution or settlement

under paragraph 6.7. They therefore fall outside the "Other Sites" as that term is used in the operative provisions of the 1990 Agreement and 1992 Agreement.

U.S. Fire's reliance on the broad definitional language and the "known or unknown" phrasing is unavailing when read against the specific operative limitations and cross-references. *See Wood*, 2021 IL App (1st) at ¶ 51 (When a general provision and specific provision of a contract are at odds, the specific provision controls.). U.S. Fire's argument that the parties intended a global release of all future environmental pollution claims at any other location would nullify the carefully structured framework the parties created in 1990 and incorporated in 1992. Similarly, the parties' post-1992 course of conduct—while consistent with honoring the release as to the original Wyoming Action disputes—cannot expand the release beyond the disputes the agreements actually addressed. The release in the 1992 Agreement does not bar the new insurance coverage claims in the 2021 Action.[5]

---

[5] After the close of briefing, but prior to oral argument, Union Pacific submitted a statement of additional authority pursuant to RAP 10.8. Union Pacific cited to and discussed a 2003 decision of the Illinois Supreme Court. U.S. Fire moved to reject and strike this statement of additional authorities as constituting an authority and argument available to Union Pacific when it filed its opening and reply briefs. We agree with U.S. Fire that Union Pacific's statement of additional authority is inconsistent with RAP 10.8 and grant the motion to strike.

No. 41023-4-III
*Union Pac. R.R. Co. v. U.S. Fire Ins. Co.*

We reverse the order granting summary judgment to U.S. Fire and the order

denying Union Pacific's cross-motion for summary judgment, and remand for further

proceedings consistent with this decision.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____      _____
Staab, C.J.                                 Lawrence-Berrey, J.